UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                        :

FRANKIE CORCHADO,           :
                        :
             Plaintiff,    :
                        :           21-CV-8984 (VSB)
        - against -      :
                        :       **OPINION & ORDER**
WARDEN CARTER, et al.,    :
                        :
            Defendants. :
                        :
--------------------------------------------------------X

Appearances:

Frankie Corchado
Bronx, New York
*Pro se Plaintiff*

Min Kyung Michelle Cho
New York City Law Department
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Before me is the unopposed motion to dismiss the Complaint of Pro se Plaintiff Frankie

Corchado ("Plaintiff").  Because Plaintiff did not exhaust his administrative remedies before

filing the Complaint in violation of the Prison Litigation Reform Act of 1995 ("PLRA"), the

motion to dismiss is GRANTED.

    **I.**  **Factual and Procedural Background**[1]

       On November 1, 2021, Plaintiff filed his Complaint, which he identified as "class

---

[1] The facts set forth in this section are based on my liberal interpretation of Plaintiff's complaint (the "Complaint"). (Doc. 3 ("Compl.").)  I assume any well-pleaded factual allegations in Plaintiff's Complaint to be true for the purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc*., 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

action,"[2] utilizing the Southern District of New York's Prisoner Complaint form.  (Compl.)

Plaintiff brings claims against Warden Carter, Captain Guerra, Captain John Doe, and Captain

Horton for violations that occurred at the Vernon C. Bain Correctional Center on October 5,

2021.  (*Id*. at 3.)[3]  Plaintiff alleges that Defendants violated his Eighth and Fourteenth

Amendment rights.  (*Id*. at 2.)  According to Plaintiff, he and other inmates were deprived of

toilet paper, soap, and toothbrushes for two to three days.  (*Id*. at 4.)  Plaintiff states that

Defendant Horton, "the facility storehouse/supply room captain supervisor," knew or should

have known that Plaintiff and the other inmates needed these materials.  (*Id*.)  He also alleges

that Defendant Carter, the facilities warden, and Defendant Guerra, the "3-AA Housing Unit

Supervisor Captain," knew or should have known that Plaintiff and the other inmates endured

those living conditions for two to three days.  (*Id*. at 4–5.)  Plaintiff further alleges that, after he

notified Defendant Guerra of the issue, Guerra pressed her emergency security button, which led

to Plaintiff and the other inmates being placed in hand restraints and taken to the facilities intake

holding cells.  (*Id*. at 5.)  There, Defendant John Doe, the shift facilities supervising intake

captain, knew or should have known that "14th Amendment violations of corporal punishment"

were occurring.  (*Id*. at 5.)  Plaintiff claims that the toilet water was then shut off and the inmates

were not given food or water for seven to eight hours.  (*Id*. at 5.)

Plaintiff alleges that, as a result of Defendants' violations, he was robbed of proper

nutrition, was unable to perform normal daily activities, and that he suffered nausea and

headaches from dehydration and bleeding gums due to the inaccessibility of toothbrushes.  (*Id*.)

---

[2] Plaintiff identifies a number of other potential plaintiffs in his facts section.  (Compl. 4.)  These other potential plaintiffs have not been joined as parties to the action.

[3] Since Plaintiff's Complaint does not contain paragraph numbers, my citations reference page numbers in the Complaint.

He claims that he suffered psychological, mental, and emotional harm from Defendants' actions. (*Id.*)  Plaintiff seeks punitive and "compensative" damages, an order deterring Defendants and the facility's corrections officers and staff from using corporal punishment, and an order to provide the inmates the necessary hygiene materials.  (*Id.*)

On December 1, 2021, after Plaintiff filed his Complaint, Chief Judge Laura Taylor Swain granted Plaintiff's application to proceed *in forma pauperis*.  (Doc. 5.)  This case was then assigned to me on December 3, 2021.  On March 7, 2022, Defendants filed a motion to dismiss, (Doc. 11), and a memorandum of law in support, (Doc. 13 ("MTD")).  On that same day, Defendants filed a certificate of service to show that Defendants served Plaintiff with the notice of the motion to dismiss, the supporting memorandum of law, and the Notice to Pro Se Litigant Who Opposes a Rule 12 Motion Supported by Matters Outside the Pleadings.  (Doc. 14.)  Plaintiff has not filed an opposition to Defendants' motion to dismiss, sought an extension of time to respond to the motion, nor taken any other action in this case since filing the Complaint.

## II.   Legal Standards

### A.  *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237. "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 230 (2d Cir. 2016) (internal quotation marks omitted). In ruling on a motion to dismiss, a court "may also consider matters of which judicial notice may be taken," *Staehr v. Hartford Fin. Servs. Grp., Inc*., 547 F.3d 406, 425 (2d Cir. 2008) (citation omitted), which includes "documents either in [a] plaintiff['s] possession or of which plaintiff[] had knowledge and relied on in bringing suit," *Kalyanaram v. Am. Ass'n of Univ. Professors*, 742 F.3d 42, 44 n.1 (2d Cir. 2014) (internal quotation marks omitted). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.

### B.  *Pro Se Litigant*

Even after *Twombly* and *Iqbal*, a "document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). Further, pleadings of a pro se party should be read "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006) (quoting *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir.

2003)).  Nevertheless, dismissal of a pro se complaint is appropriate where a plaintiff fails to state a plausible claim supported by more than conclusory allegations.  *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  In other words, "the duty to liberally construe a plaintiff's complaint is not the equivalent of a duty to re-write it."  *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal quotation marks omitted).

In addition, "[a] court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic[]' or 'delusional.'" *Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)).

### C.  *Unopposed Motion to Dismiss*

"In deciding an unopposed motion to dismiss, a court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency.'" *Haas v. Com. Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) (quoting *McCall v. Pataki*, 232 F.3d 322 (2d Cir. 2000)). "Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Id.* (internal quotation marks omitted).

### III.   Discussion

Defendants claim that Plaintiff failed to exhaust his administrative remedies under the PLRA.  The PLRA precludes an incarcerated individual from bringing any action "with respect to prison conditions," whether under § 1983 or any other federal law, unless he exhausts all available administrative remedies.  42 U.S.C. § 1997e(a).  The purpose of the PLRA is "to reduce the quantity and improve the quality of prisoner suits and to afford corrections officials

time and opportunity to address complaints internally before allowing the initiation of a federal case." *Abney v. McGinnis*, 380 F.3d 663, 667 (2d Cir. 2004) (internal quotation marks omitted). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), including claims related to conditions of confinement, *see Orta v. City of New York Dep't of Correction*, No. 01 CIV. 10997 (AKH), 2003 WL 548856, at *2 (S.D.N.Y. Feb. 25, 2003) (holding that plaintiff's suit concerning conditions of confinement at Rikers Island "falls within the scope of the PLRA").

Exhaustion must be "proper," meaning that a plaintiff must comply with the particular grievance procedures of the institution to which he is confined. *See Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006). Thus, to assess whether a plaintiff exhausted his remedies, a court must carefully examine the applicable grievance procedures at a plaintiff's correctional facility available at the time of the events alleged the complaint. *See Taylor v. N.Y. State Dep't of Corr.*, No. 03 Civ. 1929(PKC), 2004 WL 2979910, at *6 (S.D.N.Y. Dec. 22, 2004) (citing *Abney*, 380 F.3d at 668).

The New York City Department of Corrections ("DOC") administers a grievance procedure entitled the Inmate Grievance Resolution Program ("IGRP")[4] for inmates at its facilities. *See Tartt v. City of New York*, No. 12-CV-5405, 2014 WL 3702594, at *2 (S.D.N.Y. July 16, 2014) (noting that the IGRP "lays out a standard process for adjudicating inmate complaints"). "The IGRP applies to 'any inmate who is directly and personally affected by an issue, condition, practice, service, or lack of an accommodation with regard to any issue that may

---

[4] The IGRP is publicly available at https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf (last visited September 6, 2022).

arise in connection with their incarceration or action relating to their confinement.'" *Massey v. City of New York*, No. 20CV5665 (GBD) (DF), 2021 WL 4943564, at *7 (S.D.N.Y. Aug. 30, 2021) (quoting IGRP § I), *report and recommendation adopted*, No. 20CIV5665GBDDF, 2021 WL 4459459 (S.D.N.Y. Sept. 29, 2021), *aff'd*, No. 20CIV5665GBDDF, 2021 WL 5234977 (S.D.N.Y. Nov. 9, 2021).

To the extent an inmate's grievance is subject to the IGRP, the inmate must first submit the grievance with the Inmate Grievance Resolution Committee ("IGRC") within ten business days of the condition giving rise to the grievance, using a specific form or calling 311 to file a complaint. IGRP §§ III(A), V(F), V(H). The IGRC then has seven business days to investigate the submission and determine whether it should remain open or closed. *Id*. § VI(A)(1). If the inmate disagrees with the IGRC's resolution, he may appeal to the facility's Commanding Officer, who then has five business days to issue a determination. *Id*. §§ VII(A)–(B). If the inmate is also dissatisfied with the Commanding Officer's decision, he has two business days in which he may appeal the decision to the Division Chief. *Id*. § VII(D). The Division Chief then has five business days to issue a decision. *Id*. § VIII(B). The inmate may then appeal that decision to the Central Office Review Committee within two business days. *Id*. Within five business days, members of the Central Office Review Committee must submit their decision on the appeal. *Id*. § IX(F)(1)(b). *See also Massey*, 2021 WL 4943564, at *7 (explaining the steps of the IGRP grievance process).

"[F]ailure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. However, where failure to exhaust appears on the face of a complaint, the complaint may be subject to dismissal under Rule 12(b)(6). *Williams v. Dep't of Corr.*, No. 11 Civ. 1515(SAS),

2011 WL 3962596, at *5 (S.D.N.Y. Sept. 7, 2011).  Courts in this Circuit have routinely dismissed claims where, based on the face of the pleadings, it "would have been temporally impossible for the plaintiffs to have exhausted their administrative remedies before filing the complaint[]." *Miller v. Annucci*, No. 17-CV-4698 (KMK), 2019 WL 4688539, at *12 (S.D.N.Y. Sept. 26, 2019) (collecting cases).

Here, based on the face of the Complaint, Plaintiff could not possibly have properly exhausted his administrative remedies before filing this lawsuit.  Plaintiff alleges that the events giving rise to the Complaint occurred on October 5, 2021.  (Compl. 4.)  Plaintiff then delivered the Complaint to prison authorities for mailing on October 12, 2021.  (*See* Compl. 7.)  Since "[u]nder the 'prison mailbox rule,' a submission from an incarcerated pro se litigant is generally deemed to have been filed when it is given to prison officials," *Smith v. City of New York*, No. 12-8131, 2014 WL 2575778 (S.D.N.Y. June 9, 2014), I conclude that only seven days passed between the alleged violations and Plaintiff's filing the Complaint.  Given the number of days required to satisfy each step of the IGRP grievance process, it is impossible that Plaintiff completed the grievance process before filing his Complaint.[5]  Plaintiff therefore failed to exhaust his administrative remedies, making his Complaint premature and in violation of the PLRA.  *See Perez v. City of New York*, No. 14-CV-7502, 2015 WL 3652511, at *3 (S.D.N.Y. June 11, 2015) (dismissing for failure to exhaust the IGRP process where the plaintiff filed his

---

[5] Even if the IGRP process occurred in the most expeditious fashion possible and each step only took one day, with the next steps occurring on consecutive days, the entire process would take, at minimum, eight days.  (Day 1: inmate submits the grievance, (IGRP §§ V(F), (H)); Day 2:  IGRC investigates the submission and makes a determination, (*id*. § VI(A)(1)); Day 3:  inmate appeals the determination to the Commanding Officer, (*id*. §§ VII(A)–(B)); Day 4:  Commanding Officer issues a determination, (*id*.); Day 5:  inmate appeals the determination to the Division Chief, (*id*. § VII(D)); Day 6:  Division Chief issues a decision, (*id*. § VIII(B)); Day 7:  inmate appeals that decision to the Central Office Review Committee, (*id*.); Day 8:  the Central Office Review Committee submits their ultimate decision on the appeal, (*id*. § IX(F)(1)(b)).)  In any event, the IGRP process permits the inmate or officer up to five or ten business days to complete each step, and it therefore presumably routinely takes significantly more than eight days to complete the grievance process.

complaint only one week after the incident occurred).

Even reading Plaintiff's Complaint "to raise the strongest arguments that [it] suggest[s]," *Brownell*, 446 F.3d at 310 (internal quotation marks omitted), it is clear from the face of Plaintiff's Complaint that he failed to exhaust his administrative remedies and the Complaint is not plausible on its face, *Iqbal*, 556 U.S. at 678.  Plaintiff's Complaint must therefore be dismissed.

IV.   **Conclusion**

For the foregoing reasons, the motion to dismiss is GRANTED.  The Clerk of Court is directed to mail a copy of this Opinion & Order to Pro se Plaintiff, to terminate all open motions on the docket, and to close this action.

SO ORDERED.

Dated: September 7, 2022
         New York, New York

Vernon S. Broderick
United States District Judge